## UNITED STATES DISTRICT COURT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| GREGG FRANKEL & WILLIAM BRUNER, individually & for all those similarly situated, Plaintiffs, | CASE NUMBER: 17-_____ |
| -against- | CIVIL COMPLAINT |
| RICHARD CATENA AUTO WHOLESALERS INC. & JOHN DOES 1-5 as agents and/or employees of Defendant, Defendants. | Plaintiff demands trial by jury |

Plaintiffs, GREGG FRANKEL & WILLIAM BRUNER, on behalf of themselves and all others similarly situated, by and through their counsel, complain as follows:

### PRELIMINARY STATEMENT

1. This action seeks damages, injunctive and declaratory relief on behalf of a class of all persons who purchased service contracts for extended warranties from Defendant RICHARD CATENA AUTO for their vehicles during 2010 through the present WHOLESALERS INC. In sum, Through a common and uniform course of conduct, Defendant Catena ("Catena") knew or should have known that warranties it sold as service contracts were a sham and Defendant did not intend to honor the contracts.

2. Essentially, as alleged, Catena stole thousands of dollars from every consumer car sale in the past six years, and that may total hundreds of thousands of dollars or more illegally gained by Defendants. Considering the amount of sales in the past six year period where the actual items sold were vehicles averaging $35,000 each at a minimum of 30 sold a month, and the demand here is to rescind every contract over that period, then the aggregate claim here is at least Five Million Dollars in damages, including punitive and treble damages permitted by statute.

3. The purpose of this action is to hold Catena and all those involved accountable for the maximum legal and equitable relief for defrauding the consuming public.

### PARTIES

4. Plaintiff Gregg Frankel ("Frankel") is a consumer and citizen of the State of New Jersey, residing in Lebanon, New Jersey.

5. Plaintiff William Bruner ("Bruner") is a consumer and citizen of the State of Connecticut, residing in Weston, Connecticut.

1

6. Defendant Richard Catena Auto Wholesalers Inc. ("Catena") is a New Jersey domestic corporation operating a used car dealership with its principal place of business at 430 Industrial Avenue, Teterboro, New Jersey, Bergen County and conducting business throughout New Jersey.

7. Defendants Does 1-5 are supervisors, managers, sales persons, employees and other agents of Defendant Catena whose names are presently unknown but are and were persons involved with the all aspects of the sale, financing and warranty extended to Plaintiffs. This complaint will be amended to add their true names upon discovery.

8. For purposes of this complaint, Defendants Doe are included in every allegation regarding Defendant Catena and identified in the singular as "Defendant", "Defendant's" or "Defendant Catena".

## JURISDICTION & VENUE

9. This Court has jurisdiction over this action pursuant to 15 U.S.C. §1331 Federal question pursuant to 15 *U.S.C.A.* §§ 2301-2312, the "Magnuson-Moss Act" (the "Act"). The Act creates a federal cause of action enforcing consumer warranties, and that provides jurisdiction in this court under the laws of the United States.

10. More than 100 putative class members exist and the amount in controversy by any one plaintiff is not less than $25, nor less than $50,000 of the aggregate of all claims. At least one named Plaintiff is diverse from all defendants as Plaintiff Bruner is a citizen of a state different from Defendant. 15 *U.S.C.A.* §2310(d)(3).

11. Pursuant to the Class Action Fairness Act ("CAFA"), the aggregate claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and inclusive of punitive damages, treble damages and attorneys fees as permitted in the New Jersey Consumer Fraud Act and other laws alleged herein. This is a class action in which many proposed plaintiff class members are citizens of different states from Defendant.

12. In furtherance of CAFA monetary jurisdiction, Defendant Catena sells high-end luxury vehicles in New Jersey and worldwide as confirmed by Catena in a news article at http://www.nj.com/newark/index.ssf/2008/07/highend_exports.html (**Exhibit "A"[1]**). There Defendant Catena states they can sell 400 to a low of 40 vehicles monthly. Since that article was 2008, then even using a conservative estimate for today of an average sales price of $30,000 multiplied by 20 vehicles a month results in $600,000.00 in monthly sales by 12 months equals $7,200,000.00 of purchases made annually.

13. Because this is a class covering years from 2010 to present, as alleged further herein, and because CAFA, the Magnuson-Moss Act and New Jersey's Consumer Fraud Act permit the actual car sales price per consumer included in the monetary jurisdiction, treble damages of those sales and attorney fees (estimated at 30% of that) and punitive damages, then the math plausibly supports CAFA monetary jurisdiction exceeding $5,000,000 as the $7,200,000 annual sales alone meets it.

---

[1] All exhibits attached hereto are incorporated in their entirety in this Complaint.

*14.* Pursuant to 28 U.S.C. §1367(a), this Court also has jurisdiction over the state law claims because they are so related to the Magnuson-Moss Act claims as to form pendent jurisdiction of this Court as part of the same case and controversy.

*15.* Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant systematically conduct and transact substantial business, have an agent in that vicinage and the interests of justice require it.  Also, Defendants are licensed business entities and New Jersey State corporations organized and operating in this venue, and the causes of action occurred in this District.  Moreover, Defendant's wrongful conduct (as described herein) foreseeably affects consumers in New Jersey.

**FACTUAL ALLEGATIONS**

**The Corporate Entities' Involved to Defraud Consumers**

16. On July 11, 2013, Advantage Warranty LLC  ("Advantage") was incorporated in the State of New Jersey and listed its principal place of business at 497 Westside Avenue, Suite 714, Jersey City, New Jersey, 07304.   On September 8, 2014, Advantage dissolved.

17. A May 2, 2014 State of New Jersey certificate shows that since July 11, 2013 Applied Protection Systems, LLC ("Applied") was a New Jersey corporation that assumed Advantage's name, address and registered agent Kenneth T.  Free (**Exhibit "B"**).

18. Upon information and belief, Kenneth T. Free created Applied as an unfunded shell corporation pretending to be an obligor of extended car warranties and GAP financing insurance and Applied did not have an insurance company backing it nor the funds to provide the warranties and insurance to consumers in the first place.

19. Defendant Catena knowingly and with reason to know used that shell company to pad their car sales prices by thousands of dollars more by selling the non-existent warranties of Applied for some $4,000 and GAP financing of some $600 to consumers.

20. To convince consumers they were purchasing from a valid company, Defendant Catena produced documents called "GAP ADDENDUM" and "APPLIED PROTECTION SYSTEMS VEHICLE SERVICE CONTRACT" containing an Applied logo with printed confirmations that they were the "Automotive Industry Experts for Over 20 Years" and "Apply the Needed Protection…for Your Peace of Mind".

21. Those affirmations were deliberately deceptive, fraudulent and false because Applied did not exist for 20 years, but in fact was only created a few years before by filing paperwork as if it was a corporation able to provide such warranties and insurance.  Applied was not an "Industry Expert" and could not provide Protection" or "Peace of Mind" as fraudulently stated on the documents Defendant produced.

22. The Service Contract and GAP documents listed Applied's contact information at "P.O. Box 587 Bound Brook, NJ 08805, phone: 1-877-325-7811 www.appliedprotectionsystems.com".

3

23. At point of sale, Defendant Catena insisted that a consumer pay $4,000, for example, more for a car warranty when Catena knew it would not pay that amount to the alleged obligor of the warranty but actually kept that money for itself by including those additional fees into the car sales price and/or lease documents at closing rather than take a separate check to pay the alleged warranty company.

24. Defendant Catena profited from selling fake warranties without disclosing to consumers that Catena reaped a profit from selling it; thus, preventing the consumer the opportunity to bargain for a lesser warranty fee or decline the padded fee. By concealing that information, Defendant Catena could keep the warranty monies for itself and never apply it to the purported extended warranty contract and GAP insurance it sold.

25. Through a common and uniform course of conduct, Defendant Catena, acting individually and collectively through its agents and dealers, customarily sold sham warranties from Applied and other companies that either did not exist or were not funded or backed by an insurance company to insure the products they sold to consumers, then Catena failed to honor the contracts they sold.

**Defendant Sells Fake Extended Warranties to Plaintiffs**

**A. Plaintiff Frankel**

26. On January 19, 2015, Plaintiff Frankel went to Defendant Catena in Teterboro, NJ to purchase a 2011 Mercedes-Benz with 33,087 miles for $73,000.00.

27. At the point of sale, Defendant Catena insisted that Plaintiff Frankel could not conclude the sale unless he purchased an additional warranty called a Platinum Plan for $3,000.00 more.

*28.* Plaintiff Frankel was convinced by Defendant Catena that warranty was necessary to conclude the sale.

29. Defendant Catena sold Plaintiff Frankel a $3,000.00 warranty protection plan naming Applied as the obligor of the warranty (the "Service Contract") (**Exhibit "C"**-personal information redacted**).**

30. The Contract of Sale shows a credit to Catena as "Service Contract…$3000.00" (**Exhibit "D"**).

**The Warranty Service Contract**

31. The top of the Service Contract, page 1 (Exh. C), has Applied's logo and contact information. The upper right corner states that Applied is the "Automotive Industry Experts for Over 20 Years".

32. The Service Contract is signed by Defendant Catena as the "Authorized Selling Dealer's Signature" and by Plaintiff Frankel as the customer. It lists Applied as the "Vehicle Service Contract Administrator" and Defendant Catena as the "Dealer".

33. Page 1 shows that Plaintiff Frankel paid $3,000 for a period of "48 months or 50,000 miles" with a $100 deductible.

34. Page 2 it states that "[t]he selling dealer named above is responsible to send payment to the obligor and a copy of the vehicle service contract to put the vehicle service contract into effect." The next page reiterates under "Gold and Platinum Coverage Plan" and under "Contract Acceptance Date" that the dealer must submit the service contract to Applied.

35. Page 8, under "New Jersey", states that "Obligor" and "Applied Protection Systems, LLC" "means the selling dealer."

36. Throughout the Service Contract, it lists Applied's contact information as "P.O. Box 587, Bound Brook, NJ", Phone and Fax of 1-877-725-7811 and a website at www.appliedprotectionsystems.com".

**Plaintiff Frankel Discovers That Warranty Was a Sham**

37. On or about October 28, 2016, Plaintiff Frankel's car had a water pump issue. The car had 49,293 miles on it and was within the warranty period of his Service Contract. He brought it to a Mercedes dealer for repairs to be made under Applied's Service Contract.

38. The Mercedes Dealer informed Plaintiff Frankel that Applied did not exist. In fact, Applied's phone of 1-877-725-7811 and website at www.appliedprotectionsystems.com listed on the Service Contract did not exist.

**Defendant Catena Ignores Plaintiff Frankel's Notice of the Fraud**

39. From on or about October 28 through November 15, 2016, Plaintiff Frankel called, e-mailed and faxed Defendant Catena numerous times for answers regarding his $3,000 payment for the non-existent Applied warranty. Also, he emailed copies of the Service Contract to Defendant Catena at their request after he explained on one of the calls that they sold him a warranty to a company that did not exist.

*40.* Defendant Catena received his communications but never returned his calls or communications to date.

*41.* Plaintiff Frankel did not cause any of the defects he complained of in the vehicle, he gave Defendant a reasonable opportunity to repair the defects and Defendant failed to repair the vehicle despite being given a reasonable opportunity to do so.

*42.* Since Defendant took Plaintiff's money for the warranty and was listed as Applied's agent on the Service Contract, then Defendant was the only reasonable point of contact for the Service Contract when Applied did not exist. Also, the Service Contract lists Defendant as the responsible party as well.

43. On November 18, 2016, Plaintiff paid $1,704.08 to repair his car at a Mercedes dealership because Defendant refused to respond to him or enforce the Service Contract he paid for.

### B. Plaintiff Bruner

44. On December 26, 2014, Plaintiff Bruner saw an advertisement on an auto-trader website for a Mercedes S65 AMG with 29,000 for $88,000 at Defendant Catena's warehouse.

45. After agreeing upon the sale price, at the point of sale Defendant Catena insisted that the sale could not conclude unless Plaintiff Bruner purchased an additional warranty called a Platinum Plan for $4,000.00 more.

*46.* Plaintiff Bruner was convinced by Defendant Catena that warranty was necessary for the sale.

47. Plaintiff Bruner received and executed the same Service Contract of Applied with the same terms as alleged in paragraphs 31 through 36 herein, but with his details and price inserted in place of Plaintiff Frankel's (**Exhibit "E").**

48. Page one of the Service Contract shows that Plaintiff Bruner paid $4,000 for a period of "48 months or 48,000 miles" with no deductible, which cost an additional $100 surcharge apparently at time of sale.

49. The Contract of Sale shows a credit to Defendant Catena as "Service Contract….$4000.00 (**Exhibit "F").**

*50.* In about late October, 2016, Plaintiff Bruner discovered that Applied did not exist and that he paid $4,000 for a non-existent warranty.

51. From on or about late October through November, 2016, Plaintiff Bruner called, e-mailed and faxed Defendant Catena numerous times for answers regarding his $4,000 paid for the non-existent Defendant Applied warranty. He forwarded copies of the Service Contract to Defendant Catena at their request after he explained they sold him a non-existent warranty.

*52.* Defendant Catena received his communications and chose to ignore him to date.

### CLASS ALLEGATIONS

53. Upon information and belief, Defendant Catena customarily sold non-existent extended warranties and/or extended warranties using names of various companies, not just Applied, that were not adequately funded and could not be honored.

54. Plaintiffs bring this action on behalf of themselves and a class of persons initially defined as follows and based upon New Jersey's six (6) year consumer fraud statute of limitations:

For the period of six years before November, 2015, being November, 2010 through November, 2016, all those consumers who paid (a) a fee for an extended warranty and GAP insurance to Defendant Catena that was included in the vehicle sales price for which the warranty and/or company did not exist and/or said fee was never paid to the purported servicer of the warranty.

55. Excluded from the Class are Defendant and any affiliate, parent, or subsidiary, any entity in

which Defendants have a controlling interest, any officer, director, employee, successor or assign of Defendants, anyone employed by counsel for Plaintiffs in this action, and any Judge to whom this case is assigned as well as his or her immediate family and staff.

56. The applicable criteria of Federal Rule of Civil Procedure Rule 23 are as follows:

**Numerosity.** Members of the Class are so numerous that their individual joinder herein is impracticable because it is composed of thousands of consumers geographically dispersed throughout New Jersey, and likely adjoining states such as Connecticut where Plaintiff Bruner is from. The Class is ascertainable and identifiable because the precise number of members of the Class can be ascertained through discovery of Defendant's sales, service, maintenance and complaint records, among other discovery.

**Common questions.** Common questions of law and fact exist as to all members of the putative Class and predominate over questions affecting only individual Class members. Those common questions include:

 a. Whether Defendant violated the New Jersey Consumer Fraud Act 56:8-1*et seq.* and the Magnuson Moss Act*,* as alleged in this complaint by (a) taking fees for extended warranties and GAP coverage but failing to submit the fees to the obligor of the extended warranties and GAP coverage so Defendant can unlawfully profit and (b) selling fake extended warranties to consumers from a company Defendant knew or should have known did not exist so Defendant could profit.

b. Whether Plaintiffs and the other putative Class members are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction, and

 c. Whether Plaintiff and the other Class members are entitled to damages and other monetary relief, including the full sales price of their vehicles sold with a warranty that did not exist.

 **Typicality.** Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs purchased the same non-existent extended warranties and GAP insurance as all other Class members.

**Adequacy.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent and they and their counsel will fairly and adequately represent the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class action litigation to prosecute this action vigorously.

**Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible as each member expended on average about $4,000.00 for the sham warranties. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing a myriad of actions, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court

system as presented by legal and factual issues of each case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

57. Alternatively, the Class may be certified because:

a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant Catena;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede Plaintiffs' ability to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the Class, for instance refusing to enforce the warranties they sold; thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

58. Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiff and the Class members.

**FIRST COUNT**
**Violations of the Magnuson-Moss Warranty Act**
**(15 U.S.C §§2301-2312)**

61. All prior allegations are repeated and re-alleged as if set forth at length herein.

62. Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (the "Act") in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive, and being dishonored. To remedy this problem of deception and failure to honor warranties, the Act imposes civil liability on any "warrantor" for, *inter alia,* failing to comply with any obligation under a written warranty and/or implied warranty. *See* 15 U.S.C. §2310(d)(1).

63. The Act authorizes a "suit for damages and other legal and equitable relief." *Id.* The Act authorizes the award of attorneys' fees *Id.,* and expressly authorizes class actions. 15 U.S.C. § 2310(e). It is a consumer protection statute supplementing state warranty law and providing a cause of action for breach of warranty at 15 U.S.C. §2310(d).

64. The cars and extended warranty under the Service Contract are consumer products pursuant to 15 U.S.C. § 2301(1). Plaintiffs are a "consumer" as defined at 15 U.S.C. §2301(3), Defendant is a "supplier" and "warrantor" as defined at 15 U.S.C. §2301(4) and (5) and the extended warranty Service Contracts sold by Defendant are a "service contract" for services to be performed over a fixed period of time or duration, per the year and mileage prerequisites, as defined at 15 U.S.C. §2301(8).

65. Defendant's Service Contract is an express "written warranty" that became the basis of the bargain between the Defendant and the buyer for purposes other than resale of such product within the meaning of section 2301(6)(B) as Defendant insisted at point of sale the service Contract must be purchased.

66. Pursuant to the Act, Plaintiffs afforded Defendant a reasonable opportunity to cure its failures to comply with the warranty and Defendant deliberately chose to ignore their demands, so Plaintiffs are now proceeding in their representative capacities as putative Class representatives for a putative Class. 15 U.S.C. §2310(e).

67. Defendant sold a "deceptive warranty" because the warranties they sold did not exist in the first place as they are from unfunded and uninsured companies, and Defendant knew or should have known the companies they use for the warranties did not exist but sold it anyhow to profit from its own fraud. 15 U.S.C. §2310(c)(2).

68. Also, Defendant sold warranties at thousands of dollars for each vehicle sold which most of that money actually went into Defendant's pocket, not to the warranty company and then Defendant never transferred the funds to the warranty company despite its obligations under the contracts to do so.

69. It was also deceptive and violates the Act for Defendant to sell warranties claiming to be a certain price without disclosing the fact that Defendant was actually profiting from the fee.

70. Accordingly, Defendant breached its duties to the consumers and failed to comply with the warranty. 15 U.S.C. §2310(d)(1).

71. The amount in controversy of the Plaintiffs' individual claims meets or exceeds $25 and the aggregate amount in controversy meets or exceeds $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

72. The Act provides for "damages and other legal and equitable" relief where there has been a breach of warranty or failure to comply with the obligations the Act imposes. 15 U.S.C. § 2310(d). Plaintiffs are entitled to rescission, plus actual damages, incidental damages, consequential damages, attorneys' fees, and costs pursuant to 15 U.S.C. §2310(d).

73. Defendant's knowledge of the fact that it would not honor its warranties for the vehicles it sold and Defendant was given more than adequate opportunity to cure the problem, which opportunity it has not taken to date.

74. Plaintiffs and the putative Class were damaged by Defendant's failure to comply with its obligations under the applicable express and implied warranties. As a direct and proximate cause of Defendant's breaches of express and implied warranties and the Service Contract, Plaintiff and other Class members have suffered actual economic damages and are threatened with irreparable harm.

## SECOND COUNT
**Violations of the Consumer Fraud Act N.J.S.A. 56:8-1, *et. seq.***

75. All prior allegations are repeated and re-alleged as if set forth at length herein.

76. Plaintiffs, the class members and Defendant are "persons" within the meaning of N.J.S.A. 56:8-1("CFA"). Plaintiffs are a "consumer" subject to the CFA.

77. Defendant is a "seller" subject to the CFA and conducted trade and commerce within the meaning of the CFA.

78. The CFA is a cumulative remedy wherein remedies under its provisions can be awarded in addition to those provided under separate statutory and common law schemes.

79. Plaintiffs' purchase of vehicles and the extended warranty Service Contract from Defendant is a sale of "merchandise" for personal, family or household purposes and they have suffered ascertainable losses as a result of Defendant's breach of express warranty and other unlawful conduct as detailed herein.

80. Defendant's practices, acts, and conduct as described above, including Defendant insisting at point of sale that the sale could not close without purchasing the Service Contract, were intended to induce and did induce Plaintiffs and other Class members to purchase extended warranties for cars in which said warranties did not exist or were not put into effect by Defendant Catena by their retaining the warranty fees for its own profit and not paying it to an obligor for the warranty.

81. Also, Defendant presented Plaintiffs with Service Contracts fraudulently affirming and advertising Applied Protection Systems as "Automotive Insu

82. Defendant Catena's practices, acts, and conduct, as set forth herein, violated the CFA by knowingly concealing that (a) the extended warranty did not exist and Defendant Catena did not intend to pay the fees for the sale of such to an obligor of said warranty and to perpetuate the fraud (b) Defendant Catena refused to respond to consumers who contacted Defendant for information about the warranty and deliberately ignored them while feigning they would investigate the matter by forcing consumers to email and fax to Defendant their sham warranties Defendant sold to them.

83. Defendant has otherwise acted in an unconscionable way by using bait and switch, deception, fraud, false pretense, false promise and/or material omission involving the extended warranty coverage and claims involving the coverage they sold under Service Contracts. Defendant and its agents acted affirmatively in such a manner in violation of the CFA.

84. Defendant knowingly concealed, suppressed, or omitted facts; was aware of the sham warranty; would not honor the warranty; refused to verify consumer complaints; and/or refused to execute its warranty responsibility as promised in writing. Plaintiff and the Class aver that such acts constitute a refusal to perform the repairs and replacements in accordance with the warranty, in violation of the CFA, N.J. Stat. Ann. §56: 8-2.

85. The above stated practices are unlawful and damaged consumers by their paying fees for non-existent extended warranties.

86. As a result of Defendant's conduct, Plaintiffs and the Class have suffered ascertainable losses and are entitled to the remedies prayed for above and recapitulated in the prayer for relief below.

### A. Violations of the Used Car Lemon Law

87. The Used Car Lemon Law, N.J.S.A.56:8-67, *et. seq* ("UCLL") is a supplement to the CFA. A violation of the Used Car Lemon Law is a *per se* unlawful act under the CFA.

88. Defendant is a motor vehicle "Dealer" as defined by the CFA and the UCLL and subject to the UCLL and the CFA. N.J.S.A. 56:8-1, *et seq.* and 56:8-67.

89. The UCLL, N.J.S.A. 56:8-67, *et seq.,* requires dealerships to provide a limited written warranty with all used cars sold for more than $3,000 that are 7 model years or newer and with less than 100,000 miles, and that warranty requires the dealership to repair defects in certain covered components at the dealership's expense less a $50 deductible. N.J.S.A. 56:8-70; N.J.A.C. 13:45A-26F.3(c).

90. At the time of sale, Plaintiffs purchased vehicles less than 7 model years old with less than 100,000 miles on the odometer, and were therefore subject to the UCLL warranty provisions of N.J.S.A.56:8-69, N.J.A.C 13:45A-26F.3(a).

91. By operation of law, pursuant to the UCLL at N.J.S.A.56:8-74, Defendant Catena gave the 30-day/1,000 mile (whichever comes first) UCLL Warranty to Plaintiffs although Defendant did not disclose the existence of the UCLL Warranty.

92. The UCLL at N.J.S.A. 56:8-68, specifies unlawful practices for used car dealers in the sale of any used motor vehicle whether or not the vehicle is subject to the UCLL Warranty.

93. Pursuant to the UCLL at N.J.S.A. 56:8-68 in relevant part, "It shall be an unlawful practice for a dealer:

\*\*\*\*

f. To fail to disclose, prior to sale, the existence and terms of any written warranty, service contract or repair insurance offered by the dealer in connection with the sale of a used motor vehicle.

g. To misrepresent the terms of any warranty, service contract or repair insurance offered by the dealer in connection with the sale of a used motor vehicle.

h. To represent, prior to sale, that a used motor vehicle is sold with a warranty, service contract or repair insurance when the vehicle is sold without any warranty, service contract or repair insurance.

94. Defendant's violations of the UCLL at N.J.S.A. 56:8-68 include, but are not limited to

misrepresenting the existence of a service contract provided by Applied, in violation of N.J.S.A. 56:8-68(g) and/or (h) as the warranty Defendant offered was non-existent and not intended to be enforced by Defendant or Applied.

95. As a result of Defendant's violations of the UCLL, Plaintiffs suffered an ascertainable loss.

**THIRD COUNT**
**Declaratory Relief**

96. All prior allegations are repeated and re-alleged as if set forth at length herein.

97. This claim is asserted on behalf of Plaintiff and other Class members in accordance with the Declaratory Judgments Act.

98. Plaintiffs and other Class members are entitled to a declaration that Defendant Catena's conduct described herein constitutes violations of applicable Statutory and common law.

99. The declaratory relief requested includes an order declaring Defendant Catena's conduct, as alleged herein, to be unlawful, and requiring Defendant to compensate Plaintiffs and other Class members in the manner described herein, including refunding their fees paid for service contract warranties that did not exist and/or by which Defendant failed to remit the fees paid for those service contract to the obligor.

**PUNITIVE DAMAGES**

100. Defendant's' unwillingness adequately to respond to the Plaintiffs' complaint of and their continuing obstinate refusal to honor their **warranties** and their obligations under federal and state laws show a total disregard for plaintiffs' rights, and such acts were willful and wanton and calculated to discourage and dissuade plaintiffs from pursuing their remedies any further. Punitive damages should be awarded to discourage and deter like treatment to consumers in the future.

**NOTICE TO ATTORNEY GENERAL OF ACTION**

A copy of the Complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues subject to trial.

**PRAYER FOR RELIEF**

*WHEREFORE*, Plaintiffs on their own behalf and on behalf of the Class demand judgment against the Defendant as follows:

A. An order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

B. An order enjoining Defendant from continuing to engage in unlawful business practices as alleged herein;

C. An order awarding Plaintiffs and the members of the Class restitution or other equitable relief as the Court deems proper, including, consequential damages and rescission of any warranty contracts and contracts of sales of vehicles purchased with sham warranties;

D. An an order declaring Defendant Catena's conduct, as alleged herein, to be unlawful, compensating Plaintiffs and other Class members in the manner described herein and requiring Defendant to furnish Plaintiffs and other Class members with notice of their right to the return of their monies paid, with interest, and all resulting consequential damages;

E. An an order awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest and treble damages under the CFA (N.J.S.A.56:8-19) and punitive damages in an amount not less than Five Million Dollars;

F. An Order requiring Defendant to provide notice to the Class under Rule 23;

G. An order awarding Plaintiffs and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

H. An order awarding such other and further relief as this Court may deem just and proper and fair.

Dated:   January 3, 2017          **ROPER & THYNE LLC**

/s Angela M. Roper
_____
by: Angela M. Roper, Esq.
Attorney for Plaintiffs
77 Jefferson Place
Totowa, New Jersey 07512-2614
Telephone:   (973) 790-4441
Facsimile:   (973) 790-1016
Email:  angela.roper@njlegalmalpractice.com

**LAW OFFICES OF SUSAN CHANA LASK**
Susan Chana Lask, Esq. (PHV pending)
Attorney for Plaintiffs
244 Fifth Avenue, Suite 2369
New York, NY 10001
(917) 300-1958